**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**LAURA LOPEZ,**

**Plaintiff,** **No.**

**v.**

**DAVID P. STEINER, Postmaster General,**
**United States Postal Service,**

**Defendant.**

## COMPLAINT

Plaintiff Laura Lopez ("Plaintiff"), through counsel, brings this action against David P. Steiner, Postmaster General of the United States Postal Service ("USPS" or "Agency"), in his official capacity, and alleges as follows:

### NATURE OF THE ACTION

1. This is an employment-discrimination action under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, arising from USPS's failure to reasonably accommodate Plaintiff after she suffered a severe, work-related heat stroke and became medically restricted from working in hot conditions.

2. After Plaintiff requested accommodation, USPS placed her on a written modified assignment that promised eight hours of indoor work. In practice, management progressively removed duties, repeatedly sent her home early, forced her to exhaust accrued leave, and then placed her in leave-without-pay status even though indoor work was available.

3. USPS also delayed and mishandled Plaintiff's requests for reassignment to the clerk craft and for an air-conditioned delivery vehicle or another effective accommodation.

Management failed to engage in a timely, good-faith interactive process and did not provide an effective accommodation during the relevant hot-weather period.

**PARTIES**

4. Plaintiff Laura Lopez is a resident of Hobbs, New Mexico. She has worked for USPS since approximately May 2013. During the events at issue, she worked as a City Carrier at the Hobbs Post Office.

5. Defendant David P. Steiner is the Postmaster General of the United States and is sued in his official capacity. Under 42 U.S.C. § 2000e-16(c), as incorporated into the Rehabilitation Act, the head of the employing agency is the proper defendant.

**JURISDICTION AND VENUE**

6. This Court has subject-matter jurisdiction under because Plaintiff alleges a violation of federal law.

7. Venue is proper in this District because the unlawful employment practices occurred at the Hobbs Post Office in Hobbs, New Mexico, and relevant employment records are maintained in this District.

**ADMINISTRATIVE EXHAUSTION**

8. Plaintiff timely initiated the federal-sector EEO process and filed a formal complaint of disability discrimination on December 19, 2024, Agency No. 4E-852-01577-25 and EEOC No. 450-2025-00232X.

9. The accepted claims concerned USPS's handling, from approximately July 1, 2024 through March 19, 2025, of Plaintiff's request to change crafts to a clerk position and her request for an air-conditioned vehicle or other accommodation for her heat-related limitations.

10. An EEOC Administrative Judge issued a decision on April 28, 2026. USPS issued its Notice of Final Action on May 15, 2026, implementing that decision and advising Plaintiff of her right to file a civil action within 90 days.

11. This action is timely and Plaintiff has exhausted all required administrative remedies.

**FACTUAL ALLEGATIONS**

12. As a City Carrier, Plaintiff delivered mail on a regular Hobbs route. Her work required prolonged exposure to outdoor heat and extensive time in an aging metal Long Life Vehicle ("LLV") without air conditioning.

13. Summer temperatures in Hobbs can reach approximately 110 degrees. The fans, open windows, cooling towels, water, and electrolyte packets available to carriers did not adequately control the temperature inside the LLV.

14. Before June 2024, Plaintiff had experienced repeated episodes of work-related heat exhaustion. USPS management knew of at least some of those episodes because Plaintiff was required to submit medical documentation when she missed work.

15. On June 26, 2024, after working approximately twelve hours the previous day and continuing to deliver mail in extreme heat, Plaintiff became gravely ill on her route.

16. Plaintiff's entire body began cramping. She barely made it back to the Hobbs Post Office, where coworkers attempted to cool her and called an ambulance.

17. Plaintiff was severely dehydrated and was hospitalized overnight. She was diagnosed with heat stroke and rhabdomyolysis; her muscles were breaking down and her kidney function was endangered.

18. Plaintiff notified USPS management of the incident and supplied hospital and medical documentation.

19. When Plaintiff followed up with her physician, she was restricted from working in hot conditions. Her restriction did not limit lifting, standing, sitting, or indoor work.

20. At the beginning of July 2024, Plaintiff met with Postmaster Levi Bernal, explained her restriction, and requested transfer or reassignment to indoor clerk work.

21. Bernal told Plaintiff to put the request in writing. Plaintiff did so. Bernal represented that he would submit or handle the request.

22. Plaintiff did not know USPS's craft-change procedures and reasonably relied on the Postmaster's representations.

23. On July 2, 2024, Plaintiff supplied a medical note documenting her condition and restricting her from working in the heat.

24. On July 9, 2024, USPS issued Plaintiff an Offer of Modified Assignment. The written offer contemplated full eight-hour workdays performing indoor duties including casing routes, processing packages, assisting with post-office-box mail, and completing other available work.

25. Initially, USPS provided Plaintiff with approximately eight hours of indoor work. Beginning around August 2024, however, management progressively reduced or removed her assigned duties.

26. Management changed Plaintiff's start time, at points requiring her to report at approximately 4:00 a.m., but still sent her home early after she completed the limited tasks management chose to assign.

27. Although the written modified assignment promised a full workday, Plaintiff was sometimes sent home as early as approximately 9:00 a.m.

28. USPS required Plaintiff to use annual leave to cover the hours management would not permit her to work. After Plaintiff exhausted her leave, USPS recorded the unworked hours as leave without pay.

29. Indoor work remained available. Other employees were working substantial overtime, and USPS later assigned employees with medical restrictions to duties such as shredding papers, filing, and cleaning.

30. Plaintiff repeatedly asked for additional work within her restriction. Supervisor Samantha Baker often dismissed those requests, sent Plaintiff home, and told her, in substance, that she did not know what to tell Plaintiff about the resulting depletion of leave.

31. USPS's failure to implement the modified assignment as written caused Plaintiff lost wages and the loss of accrued leave.

32. As the months passed without a meaningful response to her reassignment request, Plaintiff became fearful that she would lose her job or be forced back into dangerous heat.

33. On or about October 9, 2024, Plaintiff submitted a written request for an air-conditioned vehicle if USPS required her to resume mail delivery.

34. Bernal responded that USPS could not provide the requested vehicle, but referred the matter to the District Reasonable Accommodation Committee ("DRAC").

35. Plaintiff's request for an air-conditioned vehicle was not an unconditional insistence on one particular accommodation. It was an alternate proposal prompted by USPS's prolonged failure to resolve her request for indoor clerk work.

36. Plaintiff's regular route involved minimal sustained walking—approximately three business blocks, generally early in the morning—so an air-conditioned vehicle, route adjustment, relief from the limited walking segment, or a combination of measures could have materially reduced her heat exposure.

37. USPS did not promptly meet with Plaintiff to explore those or other effective accommodations.

38. DRAC received the referral by approximately November 1, 2024 but did not schedule an interactive meeting until January 7, 2025.

39. By December 2024, cooler weather temporarily permitted Plaintiff to resume her regular route without accommodation. That temporary seasonal improvement did not eliminate

her disability or USPS's obligation to address her known limitations before temperatures increased again.

40. The January 7, 2025 DRAC meeting did not proceed because Bernal was on leave. The meeting was not timely rescheduled.

41. In early February 2025, USPS finally offered Plaintiff a Sales, Services/Distribution Associate clerk position. Plaintiff promptly accepted.

42. Plaintiff completed the required training and examination and began the clerk position in March 2025.

43. USPS's eventual reassignment did not remedy the prior months of lost wages, depleted leave, uncertainty, and emotional distress caused by its delay and failure to provide an effective interim accommodation.

44. At all relevant times, Plaintiff was an individual with a disability or was regarded by USPS as having a disability. Her heat-related impairment substantially limited major life activities including working in hot conditions and regulating normal bodily functions affected by extreme heat.

45. USPS knew of Plaintiff's impairment and its resulting limitations through the workplace medical emergency, Plaintiff's communications, and medical documentation.

46. Plaintiff was qualified to perform available indoor work and the clerk position, and she could perform carrier work during cooler periods or with an effective accommodation that sufficiently reduced heat exposure.

47. Reasonable accommodations were available, including faithful implementation of the written modified assignment, provision of other available indoor work, temporary schedule or route modifications, an air-conditioned vehicle combined with relief from outdoor segments, and reassignment to a vacant clerk position.

48. USPS failed to engage promptly and in good faith in the interactive process, unreasonably delayed accommodation, and failed to provide an effective accommodation during the relevant period.

**COUNT I**
**Failure to Accommodate**
*Section 501 of the Rehabilitation Act, 29 U.S.C. § 791*

49. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

50. Plaintiff was a qualified individual with a disability, and USPS knew of her disability and resulting limitations.

51. Plaintiff requested reasonable accommodation by seeking indoor clerk work, providing medical restrictions, accepting a modified indoor assignment, and later proposing an air-conditioned vehicle if USPS required her to return to delivery work.

52. USPS failed to provide an effective reasonable accommodation. Among other things, it did not implement the modified assignment as written, refused to assign available indoor work, delayed reassignment, and failed to timely explore vehicle, route, schedule, or other accommodations.

53. USPS's obstruction and delay of the interactive process prevented timely identification and implementation of an effective accommodation.

54. USPS has not shown that the available accommodations would have imposed an undue hardship.

55. As a direct and proximate result, Plaintiff suffered lost wages and benefits, depletion of accrued leave, emotional distress, inconvenience, and other compensable harm.

**COUNT II**
**Disability Discrimination**
*Section 501 of the Rehabilitation Act, 29 U.S.C. § 791*

56. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

57. USPS subjected Plaintiff to materially adverse terms and conditions of employment because of disability, including depriving her of available work, repeatedly sending her home early, forcing her to exhaust leave, and placing her in leave-without-pay status.

58. Plaintiff's disability was a but-for cause of the challenged actions because those actions arose directly from management's treatment of her medical restrictions and accommodation requests.

59. USPS's asserted explanations are pretextual or otherwise insufficient. Work was available, other employees with restrictions received indoor assignments, and USPS's written offer itself contemplated full eight-hour workdays.

60. As a direct and proximate result, Plaintiff suffered lost wages and benefits, loss of accrued leave, emotional distress, inconvenience, and other compensable harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and award:

A. A declaration that Defendant violated the Rehabilitation Act;

B. Back pay, lost benefits, restoration or monetary value of improperly depleted leave, and other equitable monetary relief, with prejudgment interest;

C. Compensatory damages for emotional distress, inconvenience, and other nonpecuniary losses in an amount to be determined by the jury, subject to applicable statutory limits;

D. Appropriate equitable and injunctive relief, including correction of employment and leave records;

E. Reasonable attorney's fees, litigation expenses, and taxable costs;

F. Post-judgment interest; and

G. All other relief the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**WGLA, LLP**

By: /s/ Benjamin Gubernick
Benjamin Gubernick
717 Texas Street, Suite 1200
Houston, Texas 77002
Telephone: (346) 277-0287
Email: ben@wglawllp.com

*Counsel for Plaintiff Laura Lopez*